## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Darnell Allen (#R-73531), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 19 C 2619 |
| | ) | |
| Office of the Illinois Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION</u>

**CHARLES P. KOCORAS, District Judge:**

Petitioner Darnell Allen, a Stateville Correctional Center prisoner proceeding *pro se*, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. Challenging his 2008 Cook County bench trial convictions for murder and aggravated discharge of a firearm, his Petition asserts one claim: his trial attorney was constitutionally ineffective for insufficiently visiting with him before and during trial to discuss his case and address discovery materials. Respondent contends this claim is both procedurally defaulted and without merit. As explained below, whether Petitioner's claim is procedurally defaulted is unclear, but it is without merit. The Court denies the Section 2254 Petition and declines to issue a certificate of appealability.

# I. BACKGROUND[1]

**Petitioner's Trial**

The State presented evidence that, in the early morning hours of June 25, 2006, Petitioner shot Julius Birdine in the back and head. *People v. Allen*, 2014 IL App (1st) 121739-U, ¶ 3. Petitioner and another man, Orlando Ray, approached Birdine while he was sitting on his front porch with his pit bull, Pepper. *Id.* The men argued about dogfighting, with Ray asserting that his dog could out-fight Pepper. While the men argued, Birdine's mother-in-law came outside and told Birdine to come inside. *Id.* Meanwhile, Birdine's wife, Brandi, telephoned a friend, Phillip Kizer, to come to the house to help Birdine. *Id.*

Kizer arrived in his car and, according to his trial testimony, was unarmed. *Id.* He tried to persuade Birdine to leave with him. Birdine and Ray continued arguing, and Birdine punched Ray in the face. *Id.* As Birdine's mother-in-law attempted to pull him toward Kizer's car, Petitioner fired several shots at the car. Kizer drove away. *Id.* Birdine ran into the street after Kizer's car. *Id.* Birdine's wife and mother-in-law testified they then saw Petitioner shoot Birdine in the back, walk to where Birdine was lying, and then shoot him again in the head. *Id.*

---

[1] This Court's background facts come mainly from the state appellate court's decision in Petitioner's second direct appeal. *People v. Allen*, 2014 IL App (1st) 121739-U. A federal habeas court may "take the facts from the Illinois Appellate Court's opinions because they are presumptively correct on habeas review." *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1)).

At the close of the State's case, Petitioner's trial attorney (Raymond Prusak) informed the trial court that he was going to call Petitioner to testify and requested to present his testimony the next day so they could go over certain evidence, in particular Petitioner's post-arrest statement to police officers. *Id.* at ¶ 4. The trial court stated that it intended to finish the trial that day and recessed for a period of time to allow Petitioner and Prusak to converse. *Id.* at ¶ 5. The trial resumed later that day with Petitioner's testimony. *Id.*

Petitioner testified he did not intend to shoot Birdine and fired his gun only in self-defense. *Id.* at ¶ 6. According to Petitioner, he shot at Kizer's car only after Birdine told Kizer to "air [Petitioner's] ass out," meaning to kill him, and after Kizer pointed a gun at Petitioner. *Id.* Kizer returned fire, and Petitioner shot back while running away. He denied ever walking up to Birdine's body and shooting him in the head. *Id.* The parties stipulated at trial that a medical expert, if called, would have testified that Birdine's wounds "revealed no close range firing." Dkt. # 8-19, at 383.

Chicago Police Detective Lorenzo Sandovel testified that Petitioner gave a video statement after his arrest. *Allen*, 2014 IL App (1st) 121739-U, at ¶ 7. The statement was not played at trial, but Sandovel stated that Petitioner never said he heard Birdine tell Kizer to "air his ass out." *Id.*

The trial court found Petitioner guilty of all counts and sentenced him to 25 years' imprisonment for murder, a consecutive 25-year imprisonment term for personally firing the gun that killed Birdine, and another six-year term for aggravated

discharge of a firearm—for a total of 56 years' imprisonment. *Id.* at ¶ 8. After the trial, but before sentencing, Petitioner filed a *pro se* motion for new trial asserting, among other claims, ineffective assistance of trial counsel, which the trial court denied. *Id.*

**Petitioner's First Direct Appeal**

On appeal, Petitioner argued that the trial court did not adequately consider his *pro se* claim of ineffective assistance of counsel under *People v. Krankel*, 102 Ill. 2d 181, 189 (1984) (addressing Illinois' procedures when a defendant files a *pro se* posttrial claim of ineffective assistance of trial counsel). *See Allen*, 2014 IL App (1st) 121739-U, at ¶¶ 9–10. Agreeing, the appellate court remanded for further proceedings on the ineffective-assistance claim. *Id.*

**Petitioner's *Krankel* Hearing**

On remand, the trial court appointed an assistant public defender to represent Petitioner for an evidentiary hearing. *Id.* at ¶ 10. At the hearing, Petitioner, his former attorney Prusak, Assistant State's Attorney Michael Clarke (who prosecuted Petitioner), and witness Orlando Ray testified. *Id.* at ¶¶ 11–13. Petitioner stated that Prusak never visited him at the jail and met with him for only brief periods of time before or after court appearances while he was in a holding cell at the courthouse. *Id.* at ¶ 11; *see also People v. Allen*, 2018 IL App (1st) 153548-U, ¶ 24 (Petitioner's jail-visitor records from 2006 to 2008 showed no visits from Prusak). Prusak testified he was surprised there were no records of him visiting Petitioner in jail, but that the two had numerous meetings while Petitioner was at the court's lockup, sometimes for 3-5

minutes, other times for 20-30 minutes. *Allen*, 2018 IL App (1st) 153548-U, ¶ 27. Prusak further stated that, while he did not show Petitioner his video statement, the two of them went over the transcript of the statement several times. *Id.*; *see also Allen*, 2014 IL App (1st) 121739-U, at ¶ 12.

Prusak also testified about an Illinois Attorney Registration and Disciplinary Commission (ARDC) investigation of him shortly before Petitioner's trial. *Allen*, 2018 IL App (1st) 153548-U, ¶ 27. Prusak, a recovering alcohol and drug abuser, was investigated for neglect and misconduct in nine criminal cases between the years 2002 and 2006. *Id.* at ¶ 24. In November of 2008, two months after Petitioner was sentenced, the ARDC suspended Prusak's ability to practice law for six months. *Id.* at ¶ 24. Prusak testified that he was sober while representing Petitioner. He did not, however, tell Petitioner about the ARDC investigation. *Id.* at ¶ 27.

Assistant State's Attorney Michael Clarke testified at the *Krankel* hearing that Petitioner's trial attorney argued a self-defense theory, that the testimony and evidence submitted in support of that theory was consistent with Petitioner's recorded statement, and that Clarke was able to impeach Petitioner only on a few points. *Allen*, 2014 IL App (1st) 121739-U, at ¶ 13. Clarke also testified that "[e]ach time Prusak appeared in court," Clarke "observe[d] him go back to the lockup before and after the court call to speak with his clients." *Id.*

After the hearing, the trial court (with a different judge than the one who presided over Petitioner's criminal trial) denied Petitioner's motion for a new trial. The court

determined that Prusak: met with Petitioner numerous times and sufficiently prepared him to testify; "gave an opening statement where he introduced his theory of self-defense and stated what he expected the evidence to show;" and "made timely objections, had effective cross-examinations of the State's witnesses, and argued . . . effectively for the defendant in closing argument." *Id.* at ¶ 14 (quoting the state trial court's post-*Krankel* hearing verbal findings at Dkt. # 8-19, at 214).

**Petitioner's Second Appeal**

Petitioner's appeal following the *Krankel* hearing did not challenge the trial court's denial of his claim about Prusak's performance. Instead, Petitioner argued that the attorney appointed to represent him for the *Krankel* hearing (Assistant Public Defender Lisa Brean) was ineffective for failing to impeach Prusak's testimony at the hearing about his readiness to present Petitioner's defense. *Allen*, 2014 IL App (1st) 121739-U*, *¶¶ 15–18. According to Petitioner, Prusak's request for a one-day continuance at the close of the State's case in order to go over Petitioner's statement to police officers demonstrated that Prusak had not reviewed the statement and, thus, contradicted his *Krankel* hearing testimony that he prepped Petitioner for his testimony and was ready to proceed. *Id.* at ¶ 17. Finding no contradiction between Prusak's one-day-continuance request at trial and his *Krankel* hearing testimony, the state appellate

court determined that Petitioner's *Krankel* hearing attorney was not ineffective for failing to impeach Prusak. *Id.* at ¶¶ 15–20.

Petitioner filed a petition for leave to appeal ("PLA") with the Illinois Supreme Court, again arguing his *Krankel* hearing attorney was ineffective. Dkt. # 8-10, at 6–25. The state supreme court denied the PLA. Dkt. # 8-9.

**Petitioner's Post-Conviction Petition**

Petitioner filed a post-conviction petition in the state trial court, asserting: (1) trial counsel was ineffective: (a) for failing to meet with Petitioner to go over discovery materials and prepare his trial testimony; (b) for failing to call two witnesses (Orlando Ray and Antonio Edmonds) at trial, and (c) for not disclosing to Petitioner the ARDC's investigation; and (2) his *Krankel* hearing attorney was also ineffective for failing to call Edmonds as a witness. Dkt. # 10-3, at 75–110. The state post-conviction petition included an affidavit from Edmonds[2] and another ARDC decision from 2010 suspending Prusak's practice of law, this time for 2½ years, based on him failing two drug tests. *Id.* at 94, 104–09. Petitioner asserted that the additional ARDC sanction supported his claim that Prusak failed to investigate and call witnesses. *Id.* at 76–82.

The trial court dismissed the petition at the first stage of review upon determining it was patently without merit. *Id.* at 115–26. On appeal, Petitioner argued only his claim that Prusak was ineffective for not calling Edmonds at trial. Dkt. # 8-12.

---

[2] Edmonds purportedly would have testified that he was near the scene of the shooting. He heard gunshots and then saw Petitioner running from the scene. (Dkt. 10-3, pg. 94.)

Rejecting this claim, the state appellate court affirmed. *Allen*, 2018 IL App (1st) 153548-U. Petitioner's PLA argued that the state trial and appellate courts erred in its determination that the Prusak's 2010 ARDC disciplinary sanction was irrelevant to Petitioner's claims of ineffective assistance of counsel. Dkt. # 8-17. The state supreme court denied the PLA. Dkt. 8-16.

## II. DISCUSSION

Petitioner's Section 2254 Petition asserts one claim: his trial attorney never visited him at the Cook County Jail, and "the only communication between [them] were very short and inane conversations before and after petitioner's court appearances." Dkt. # 1, at 5. "Trial attorney," states Petitioner, "never discuss[ed] . . . the indictment and discovery materials, which included the enhance charge the prosecution was seeking under 730 ILCS 5/5-5-3(c)(8)" based on his "record of [a] criminal conviction[]." *Id.* Respondent argues that Petitioner's Section 2254 claim is both procedurally defaulted because he did not properly exhaust it and without merit. Dkt. # 7, pg. 4–9.

The procedural default issue, as discussed below, is unclear. However, it is clear that Petitioner's Section 2254 ineffective assistance of counsel claim warrants no federal habeas corpus relief on the merits.

## A.    Exhaustion and Procedurally Default Issue

Federal habeas relief is not available for a state prisoner unless he "has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). A state

prisoner must "fairly present his claim in each appropriate state court." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Fair presentment requires him to "place before the state court both the controlling law and the operative facts" of his claim in such a manner to allow the state court to resolve it. *Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017).

Respondent argues that Petitioner never presented the state appellate court with the ineffective assistance of counsel claim his Section 2254 Petition asserts—that trial counsel did not sufficiently meet with Petitioner before and during trial. Petitioner raised this issue in his first appeal, which resulted in a remand and an evidentiary hearing. *Allen*, 2011 WL 9558019, at **4–6. His second appeal after the *Krankel* hearing, however, argued only ineffective assistance by his *Krankel* hearing attorney, Lisa Brean, for not impeaching trial counsel about his readiness to proceed. *See Allen*, 2014 IL App (1st) 121739-U, ¶ 15.[3] Similarly, although Petitioner's post-conviction petition argued that trial counsel (Prusak) was ineffective for several reasons, including failing to meet with and properly prepare Petitioner, his post-conviction appeal argued

---

[3] The state appellate court explained:

> [Petitioner] asserts that his 'trial attorney, Raymond Prusak, was ineffective for a number of reasons, including failing to prepare him to testify and failing to review his statement to the police with him prior to trial.' However, that is not the basis for defendant's assignment of error based on *Strickland* in this appeal. Rather, he claims he was deprived of effective assistance of counsel by his court-appointed attorney at the *Krankel* hearing because she failed to demonstrate through impeachment of Prusak that he lied when he claimed he was prepared for trial and had prepared defendant to testify.

*Allen*, 2014 IL App (1st) 121739-U, ¶ 15.

Prusak's ineffectiveness only for not calling Edmonds to testify. *Allen*, 2018 IL App (1st) 153548-U.

Nevertheless, the state appellate court in the second appeal, albeit via the claim about the *Krankel* hearing attorney, did address Petitioner's assertions concerning his trial counsel's effectiveness:

> Here, the fact Brean did not cross-examine Prusak with his request during trial for a one-day continuance to speak with defendant was not objectively unreasonable because Prusak's continuance request did not impeach his *Krankel* hearing testimony. The record shows that after the court denied Prusak's request to hold defendant's testimony over to the next day, the court afforded Prusak a brief recess to allow him to speak with defendant, after which Prusak announced: "We are ready, Judge. Judge, we are going to call Darnell Allen." Hence, both during trial and at the *Krankel* hearing, Prusak represented that he was prepared to present defendant's testimony. During his direct examination of defendant, Prusak elicited testimony detailing defendant's theory of self-defense which was consistent with defendant's exculpatory videotaped statement that he gave to police after his arrest. The assistant State's Attorney who prosecuted the case testified at the hearing that defendant's trial testimony was consistent with his videotaped statement. Our examination of the record has not found that the direct examination of defendant by his trial counsel was deficient or that defendant's trial testimony gave any indication that he had not been prepared to testify. Consequently, defendant has not established that Prusak failed to prepare defendant to testify.

*Id.* at ¶ 18.

The Seventh Circuit has held that "an assertion that one's counsel was ineffective for failing to pursue particular constitutional issues is a claim separate and independent of those issues." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004); *see also McGhee v. Watson*, 900 F.3d 849, 853 (7th Cir. 2018); *Howard v. O'Sullivan*, 185 F.3d 721, 725 (7th Cir. 1999). In *Howard*, similar to this case, an appellate claim that post-

conviction counsel was ineffective for not adequately arguing trial counsel's ineffectiveness did not preserve the latter claim for federal habeas review. *Howard*, 185 F.3d at 725-26.

Several years later, however, the Seventh Circuit held in *Malone v. Walls*, 538 F.3d 744, 754–57 (7th Cir. 2008), that a state prisoner fairly presented his ineffective assistance of trial counsel claim, even though the claim asserted in his state post-conviction appeal argued ineffective assistance by counsel on direct appeal for not raising the claim about trial counsel. *Id.* While Malone's post-conviction appellate brief phrased its claim as challenging appellate counsel's ineffectiveness, the brief "specifically detailed the ways in which his trial counsel was ineffective," and "ma[de] clear that he [wa]s seeking redress of his trial counsel's failures" in addition to challenging his appellate attorney's ineffectiveness. *Id.* at 754.

While the instant case may be distinguishable from *Malone*, which itself acknowledged that it is an exception to the general rule, this Court need not determine whether Petitioner's second appeal fairly presented the ineffective assistance claim his Section 2254 Petition asserts. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Courts need not strain to resolve a procedural default issue where the claim's merits are more "easily resolvable." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (citing 28 U.S.C. § 2254(b)(2)); *see also Brown v. Watters*, 599 F.3d 602, 609-10 (7th Cir. 2010). "[I]t

makes sense (and is permissible) to reject a collateral attack on the merits while other procedural defenses, such as waiver, default, or lack of exhaustion, remain in the background." *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013). This Court thus addresses Petitioner's Section 2254 claim on the merits.

**B.     Petitioner's Ineffective Assistance of Trial Counsel Claim is Without Merit**

As previously discussed, following an evidentiary hearing, the state trial court denied Petitioner's claim that his trial attorney was ineffective. Dkt. # 8-19, at 210–18. Federal habeas relief is unavailable:

> [W]ith respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Furthermore, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Before applying these standards, this Court makes two brief observations. First, federal habeas review "generally requires federal courts to review one state decision." *Woolley v. Rednour*, 702 F.3d 411, 421–22 (7th Cir. 2012). "When a state collateral

12

review system issues multiple decisions, we typically consider 'the last reasoned opinion on the claim.'" *Id.* at 421 (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). As previously addressed, whether the state appellate court decided Petitioner's claim of ineffective assistance with Prusak's representation is unclear. That claim was presented to the state appellate court only through Petitioner's claim that his *Krankel* hearing attorney was ineffective for not impeaching Prusak's testimony at the hearing. Thus, "the last reasoned opinion" in this case appears to be the state trial court's opinion following the *Krankel* hearing.[4]

Second, the Supreme Court has "not defined the precise relationship between [Section] 2254(d)(2) and [Section] 2254(e)(1)." *Burt v. Titlow*, 571 U.S. 12, 18–19 (2013) (citing *Wood v. Allen*, 558 U.S. 290, 293 (2010)). Even though Section 2254(e)(1)'s presumption of correctness standard appears to apply to the state trial court's factual findings following the evidentiary hearing, *see* Dkt. # 8-19, at 209–24, without a clear indication from the Supreme Court, this Court will simply follow the Supreme Court's approach in several cases—where a state court's findings were "not an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings" under Section 2254(d)(2), a federal habeas court does not "need to decide whether that determination should be reviewed under the arguably more

---

[4] Even if the second state appellate court decision determined the merits of Petitioner's claim challenging his trial attorney's effectiveness, that court followed the reasoning of, and even quoted the findings of, the state trial court following the *Krankel* hearing. *People v. Allen*, 2014 IL App (1st) 121739-U, ¶¶ 14-18. This Court's analysis of Petitioner's § 2254 claim would thus be the same whether it looks to the state trial court's decision or the second state appellate court opinion on direct appeal.

deferential standard set out in [Section] 2254(e)(1)." *Wood*, 558 U.S. at 301; *see also Burt*, 571 U.S. at 18; *Rice v. Collins*, 546 U.S. 333, 339 (2006).

Petitioner cannot satisfy Section 2254(d) with respect to the trial court's decision that Prusak's representation did not amount to ineffective assistance. Following the *Krankel* hearing, the state trial court cited *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and correctly stated its two-prong test. "First, the defendant must show that Mr. Prusak's performance was deficient, and this requires that Mr. Prusak made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced [him]." Dkt. 8-19, at 211; *see also Strickland*, 466 U.S. at 687. "Both prongs of this test," stated the trial court, "must have been met for defendant's claim to be successful." *Id.* at 211; *see also Winfield v. Dorethy*, 956 F.3d 442, 452 (7th Cir. 2020) ("Failing to prove either element defeats a petitioner's [ineffective-assistance] claim." (citing *Strickland*, 466 U.S. at 697)).

The state trial court reasonably applied the *Strickland* standard and made factual findings well supported by the record. The state trial court noted that jail intake records indicated Prusak never visited Petitioner at the jail. Dkt. 8-19, at 215. "But [Prusak] did recall having numerous conversations with the defendant about this case" when Petitioner was in the lockup at the courthouse. *Id.* The court acknowledged that those meetings may not have occurred "over all nineteen of the pretrial court dates, but most certainly it would have been more than represented by the defendant." *Id.* at 216.

14

"Ultimately," concluded the state trial court, "it is impossible to say exactly how much time Mr. Prusak . . . took . . . speaking with the defendant about this case. However, based on the trial record, I find the time he did spend talking with the defendant [wa]s sufficient. It is clear that Mr. Prusak had an excellent understanding of the factual legal issues surrounding the defendant's case." *Id.* at 217. According to the *Krankel* hearing court, Prusak argued "the theory of self-defense . . . consistently throughout the trial," and "brought out the inconsistencies between the State's witness" before arguing during his closing that "defendant had a legitimate claim [of] fear of imminent bodily harm." *Id.* at 217–18.

These findings are supported not only by the testimony at the *Krankel* hearing, *id.* at 95–177, but also the trial court record. *Id.* at 232–463. Prusak acknowledged at the *Krankel* hearing that Cook County Jail's visitation records showed no visits by him, but he testified that he "had numerous conversations with [Petitioner] over probably 18 months" when he was in Judge Salone's lockup at the courthouse. *Id.* at 132. Prusak testified that he read Petitioner a transcript of his post-arrest statement "many times." *Id.* at 134. Prusak did not remember how long he spent with Petitioner just before proceeding with their defense, but he "did go over the statement with him" during that time and told him that "he needed to be aware of what he had said on a prior occasion." *Id.* at 142. According to Prusak, Petitioner "did great" with his testimony. *Id.* at 144.

Assistant State's Attorney Clarke testimony also supports the trial court's determinations that Prusak met with Petitioner on a number of occasions and effectively

presented Petitioner's self-defense theory. Clarke testified that he saw Prusak at court appearances "go back and speak with his clients after and before court," that Prusak was "completely coherent" and "articulate" during trial and argued a self-defense theory throughout the case, and that Clarke was able to impeach Petitioner's testimony on only two points. *Id.* at 174-77.

Petitioner's trial testimony also supports the *Krankel* hearing court's findings. *See id.* at 380–432. More specifically, Petitioner testified at trial that he had only three bullets in his gun, that he did not pull his gun out until he saw Kizer pointing a gun at him, that he fired once at Kizer's car to show he had a gun, and that he fired the remaining two bullets as he was running from the scene while Kizer was shooting at him. *Id.* at 397–402, 424–27. Such testimony demonstrates that Petitioner understood the self-defense theory Prusak sought to establish.

The trial court's post-*Krankel* hearing determinations—that Prusak sufficiently met with and prepared Petitioner for trial; that Prusak effectively, though not successfully, presented a self-defense defense; and that Petitioner could not demonstrate that Prusak's trial performance was constitutionally deficient—were neither an unreasonable application of clearly established federal law, nor an unreasonable finding of fact in light of the record evidence. *See* 28 U.S.C. § 2254(d). The state trial court's conclusion that Petitioner could not establish that his trial

attorney's performance was deficient was reasonable.[5]   Petitioner's ineffective assistance of counsel claim warrants no federal habeas relief, and his Section 2254 petition is thus denied.

### III.  NOTICE OF APPEAL AND CERTIFICATE OF APPEALABILITY

Petitioner is advised that this is a final decision ending his case in this Court.  If he wishes to appeal, he must file a notice of appeal in this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).  He need not bring a motion to reconsider this Court's ruling to preserve his appellate rights.  However, if he wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b).  A Rule 59(e) motion must be filed within 28 days of the entry of this judgment, *see* Fed. R. Civ. P. 59(e), and suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if filed within 28 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4)(A)(vi).  Neither

---

[5] The Court notes that Petitioner's ineffective assistance claim focuses only on the deficient performance element. He does not address the prejudice prong, and he provides no indication that, but for Prusak's alleged errors, a reasonable probability exists of a different trial result. *See Winfield*, 956 F.3d at 452 (a failure to prove either element defeats an ineffective assistance claim) (citing *Strickland*, 466 U.S. at 697).

17

the time to file a Rule 59(e) motion nor the time to file a Rule 60(b) motion can be extended. *See* Fed. R. Civ. P. 6(b)(2).

The Court declines to issue a certificate of appealability. Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claim. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2)); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

## IV. CONCLUSION

Petitioner's habeas corpus petition [1] is denied. All pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) terminate Respondents Office of the Illinois Attorney General and the People of the State of Illinois; (2) add David Gomez, Warden, Stateville Correctional Center, as Respondent; (3) alter the case caption to *Allen v. Gomez*; and (4) enter a Fed. R. Civ. P. 58 judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

Dated: 10/28/2021

_____
Charles P. Kocoras
United States District Judge

18